IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY BREAREY, | CIVIL ACTION |
| *Plaintiff*, | |
| v. | No. 17-cv-2108 |
| MEGAN BRENNAN, | |
| *Defendant*. | |

Goldberg, J.                                                                             January 3, 2019

## Memorandum Opinion

Plaintiff, Jeffrey Brearey, brings this civil action against Defendant, Megan Brennan, Postmaster General of the United States Postal Service (the "USPS"). Plaintiff alleges that Defendant violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 (the "Rehabilitation Act") by terminating him based on his alleged "disability" of a broken ankle.

### I. PROCEDURAL BACKGROUND

On May 9, 2017, Plaintiff filed a Complaint against Defendant, Megan Brennan, alleging that Defendant violated the Rehabilitation Act (Count One).

Plaintiff worked for Defendant as a Postal Support Employee ("PSE") for various temporary periods, beginning on November 22, 2011. He was laid off in April of 2014 due to low workloads, but received an e-mail in September of 2014 that offered him a new job opportunity as a PSE for the fall and holiday mail season of 2014. On October 17, 2014, Plaintiff received an e-mail notifying him that he had been cleared for re-hire beginning the following day (i.e., October 18, 2014). Plaintiff responded, advising the USPS that he was suffering from health issues due to an injured ankle, could not report to work on October 18, 2014 as required, and requested an

1

accommodation of light duty work. About three days later, Plaintiff was instructed that he was terminated and/or not rehired.[1]

Defendant has moved for summary judgment on Count One, the only count remaining. For the reasons stated below I will grant Defendant's motion.

## II. FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed:

1. October 17, 2014, Plaintiff was "cleared for re-hire" with the United States Postal Service, beginning on October 18, 2018 through the "Fall and Holiday Mailing Season." (E-mail 10/17/14, ECF No. 20, Ex. D.)

2. Plaintiff was hired as a "PSE Mail Processing Clerk," which is a temporary position that supports career USPS employees during the high-volume mail seasons. (PSE Mail Processing Clerk STD Job Description, ECF No. 20, Ex. A; Terry Morrow Decl. 3/7/18 ¶ 7, ECF No. 20, Ex. G; Jeffrey Brearey Dep. 1/10/18 at 7:13–8:2, 8:19–9:10, ECF No. 20, Ex. K.)

3. The job description of a PSE Mail Processing Clerk states that the PSE must be able to perform the following duties on a "rotational basis:" "load[ing] mail onto automated equipment, culling out non-processable items; enter[ing] sort plan and start[ing] equipment; monitor[ing] flow of mail to ensure continuous feed; sweep[ing] separated mail from bins stackers; and stopp[ing] equipment when distribution run or operation is completed. Run[ning] machine reports, clear[ing] jams and contact[ing] maintenance for assistance when required." (PSE Mail Processing Clerk STD Job Description, ECF No. 20, Ex. A.)

4. On September 16, 2014, Plaintiff signed a waiver, acknowledging that all employees "are required to report for duty when scheduled at the scheduled reporting time with no deviations." (Jeffrey Brearey Waiver 9/16/14, ECF No. 20, Ex. B.)

5. On September 16, 2014, Plaintiff signed a waiver acknowledging that he must "be physically able to perform the duties of the position," which "requires arduous physical excretion such as but not limited to prolonged standing up to a minimum of seven (7) hours, walking continuously, pushing containers, pulling, reaching, bending, and lifting heavy sacks/trays of letter mail and magazines (up to seventy (70) pounds)." (Jeffrey Brearey Waiver 9/16/14, ECF No. 20, Ex. C.)

---

[1] Plaintiff also brought claims under the Age Discrimination in Employment Act, 42 U.S.C. § 12101, et seq. (Count Two), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Count Three). On February 16, 2018, the parties jointly stipulated to dismiss these claims with prejudice. (ECF No. 19.)

6. On October 17, 2014, Plaintiff wrote to a human resources representative, Ms. Debra Haynes: "On Oct. 7, 2014, I fell and broke my ankle in 3 places. I am not able to report on Oct. 18, 2014 as requested. I am kindly requesting for light duty work at the NDC and to retain my employment opportunity and seniority date at the USPS." (E-mail 10/17/14, ECF No. 20, Ex. D.)

7. During a phone conversation, Plaintiff informed the USPS that his doctor told him that he would be on crutches for six to eight weeks. (Jeffrey Brearey Dep. 1/10/18 at 49:6–50:15. 56:15–57:14, ECF No. 20, Ex. K.)

8. Based on Plaintiff's communications that he could not report due to his broken ankle and would be on crutches for six to eight weeks, the USPS plant manager, Terry Morrow, terminated Plaintiff. (Morrow Dep. 12/14/17 at 19:4–22:23, 30:24–31:26, ECF No. 20, Ex. H; Troxell Dep. 12/11/17 at 23:24–24:22, 70:14–23; Jeffrey Brearey Dep. 1/10/18 at 49:6–50:15. 56:15–57:14, ECF No. 20, Ex. K; Haynes Dep. 12/14/17 at 32:17–23, ECF No. 21, Ex. E.)

9. Plaintiff's October 7, 2014 x-ray confirmed that Plaintiff had a broken ankle (i.e., "a trimalleolar fracture, comminuted fracture, and displacement in the ankle"). (Dr. Syeda Abubakar Final Report 10/7/14 at FLEMING00018–00019, ECF No. 21, Ex. G.)

10. Plaintiff received treatment for his broken ankle between October 31, 2014 and December 19, 2014. On December 19, 2014, Plaintiff had surgery on his ankle. (Dr. Syeda Abubakar Final Report 10/7/14 at FLEMING00016, FLEMING00020, FLEMING00021, ECF No. 21, Ex. G.)

11. Plaintiff continued to receive follow-up treatment after his surgery through September of 2015, which consisted of physical therapy and regular check-ups with his orthopaedic specialist. By March 2, 2015, Plaintiff was transitioned from "a boot and crutches" to a "cane and a sneaker." By April 2, 2015, Plaintiff was able to walk using "one crutch and [was] stable." By May 26, 2015, Plaintiff was not using anything to assist his walking. (Dr. Fleming Reports at FLEMING0010–FLEMING0013, ECF No. 21, Ex. G.)

12. On May 13, 2015, Plaintiff's physical therapist assessed that Plaintiff "continues to show progress toward his goals. Con't [sic.] to have good and bad days but now rarely uses assistive device." During this evaluation, the new goal was stated as "return to work." (Furlong Evaluation 5/13/15 at SSA00063, ECF No. 21, Ex. G.)

13. On June 25, 2015, the orthopaedic specialist reported that the tests confirmed that Plaintiff's ankle had fully healed (i.e., the "consolidation of fracture sites"). (Dr. Fleming Report 6/25/15 at FLEMING0009, ECF No. 21, Ex. G.)

14. During Plaintiff's final visit with the orthopaedic specialist on September 3, 2015, the doctor concluded that Plaintiff had "good range of motion to the ankle" and "no instability or deformity." The tests indicated "excellent alignment." The specialist concluded that Plaintiff was "weightbearing as tolerated without restrictions." While Plaintiff reported to the orthopaedic specialist that he "occasionally" had pain, the specialist concluded that Plaintiff no longer needed treatment. (Dr. Fleming Report 9/3/15 at FLEMING0008, ECF No. 21, Ex. G.)

15. Plaintiff testified during his deposition that he still has not fully recovered from his injury because his ankle hurts when he stands for more than four-to-five hours at one time. (Jeffrey Brearey Dep. 1/10/18 at 41:9–24, ECF No. 20, Ex. K.)

16. Plaintiff further testified that he stopped receiving formal physical therapy because insurance would no longer cover it, as his "limitations" of pain when standing for long periods of time, pain when storms arise, and inability to run "cannot be improved." (Jeffrey Brearey Aff. 5/14/18 ¶¶ 6–8, ECF No. 21, Ex. H.)

17. The plant supervisor, Ms. Terry Morrow, decided not to hire Plaintiff based on his e-mail and phone call that he could not report to work because of his broken ankle and had to be on crutches for six to eight weeks. (Morrow Dep. 12/14/17 at 19:4–22:23, 30:24–31:6, ECF No. 20, Ex. H; Troxell Dep. 12/11/17 at 23:24–24:22, 70:14–23, ECF No. 20, Ex. I; Jeffrey Brearey Dep. 1/10/18 at 49:6–50:15. 56:15–57:14, ECF No. 20, Ex. K.)

18. Neither Plant Supervisor, Ms. Morrow, nor Plant Manager, Mr. Eugene Troxell, Jr., perceived Plaintiff as disabled. (Morrow Dep. 12/14/17 at 31:8–33:5, ECF No. 20, Ex. H; Troxell Dep. 12/11/17 at 31:7–11, 73:7–10, 78:8–12, ECF No. 20, Ex. I.) Ms. Morrow explained that she did not consider a broken ankle to be a disability because it is "temporary." (Morrow Dep. 12/14/17 at 32:8–10, ECF No. 20.) Likewise, Mr. Troxell concluded that Plaintiff did not have a disability because Plaintiff advised that he "[w]as unable to work for . . . six to eight [weeks]." (Troxell Dep. 12/11/17 at 71:18–24, ECF No. 20, Ex. I.)

### III. LEGAL STANDARD

#### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. Cnty. of

Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1)(A).

**B. Legal Standard under the Rehabilitation Act**

"The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement." Shiring v. Runyon, 90 F.3d 827, 830–31 (3d Cir. 1996). However, "Congress recognizes that "[e]mployers cannot be obligated to

5

employ persons who are incapable of performing the necessary duties of the job." Id. at 831. "The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. applicable to federal employers and to employers receiving federal funding." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007) (citing 29 U.S.C. § 791).

Accordingly, the burden-shifting analysis set forth in McDonnell Douglas, 411 U.S. 792 (1973) applies to discrimination actions brought under the Rehabilitation Act. Id. at 185. The employee bears the burden to establish a prima facie case of discrimination by demonstrating "(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Id. (quoting Shiring, 90 F.3d at 831). The Rehabilitation Act defines an "individual with a disability" as "an individual who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment." Id. (citing 29 U.S.C. § 705(20)(B)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employment action." Id. The burden then shifts back to the plaintiff to show that the employer's stated reason for the employment action was pretextual. Id.

### IV. DISCUSSION AND ANALYSIS

Defendant moves for summary judgment on the only remaining claim, wherein Plaintiff alleges that Defendant violated the Rehabilitation Act (Count One) by terminating him on the basis of his disability. Plaintiff argues that he is an "individual with a disability" under the first theory of an "actual disability" and the third theory of a "perceived disability." For the reasons discussed

6

below, Plaintiff has failed to establish a prima facie case of discrimination. Accordingly, Defendant's motion for summary judgment will be granted.

**A. Plaintiff Has Failed to Establish an Actual Disability**

Plaintiff alleges that Defendant violated the Rehabilitation Act (Count One) by terminating him on the basis of his "actual disability" of a broken ankle. Defendant argues that Plaintiff cannot establish an "actual disability" because his broken ankle was a "temporary non-chronic impairment of short duration [that] is not a disability covered under the ADA." Kurylo v. Parkhouse Nursing & Rehab. Ctr., LP, No. CV 17-00004, 2017 WL 1208065, at *4 (E.D. Pa. Apr. 3, 2017). Plaintiff responds that his ankle impairment is a disability under the ADA because it substantially impaired his ability to stand and walk at times.

"[I]n order to establish the existence of a statutorily protected disability, a claimant must: 'show that she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial.'" Camacho v. Beers, No. CV 16-1644, 2017 WL 5508399, at *8 (W.D. Pa. Nov. 15, 2017) (quoting Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382 (3d Cir. 2004)). "[T]o analyze a claim under the first subsection of the definition of disability, a court must first identify the specific life activities that [p]laintiff claims are affected and determine whether those activities are 'major life activities' under the ADA. It must then evaluate whether [p]laintiff's impairment substantially limits those major life activities." Kurylo v. Parkhouse Nursing & Rehab. Ctr., LP, No. CV 17-00004, 2017 WL 1208065, at *4 (E.D. Pa. Apr. 3, 2017) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306–07 (3d Cir. 1999)).

The pertinent regulations define a "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, . . . skin, and endocrine." 29 C.F.R.

§ 1630.2(h)(1). The ADA Amendments Act of 2008 (the "ADAAA") was enacted to broaden the definition of a "disability" by "specifically address[ing] certain impairments that were not receiving the protection that Congress intended—cancer, HIV–AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities—not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them disabilities." Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (citing 154 Cong. Rec. H8286 (2008) (statement of Rep. George Miller)). However, "[n]ot every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(1)(ii). The Regulations clarify that an "impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Accordingly, the test for the actual disability prong "is whether, at the time of the adverse employment action, the limitation caused by the impairment was 'substantial.' In making this determination, the focus is on how a major life activity is substantially limited." Bush v. Donahoe, 964 F. Supp. 2d 401, 420–21 (W.D. Pa. 2013). Pursuant to the Regulations, "major life activities" include "walking, standing, sitting, reaching, lifting, [and] bending." 29 C.F.R. § 1630.2(i)(1)(i). In determining whether a major life activity is substantially limited, the courts must consider "the degree of limitation caused by the impairment and the nature of the impairment at the time of the adverse employment action." Bush v. Donahoe, 964 F. Supp. 2d 401, 420–21 (W.D. Pa. 2013) (granting Defendant's motion for summary judgment because the plaintiff could not establish that this sprain "substantially limited [her] ability to engage in the major life activities" where the injury was not chronic, required the use of a boot for less than four months, and no evidence was

8

presented that the plaintiff received any other treatment or had any other restrictions to daily life while wearing the boot).

"While '[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active,' 'a temporary, non-chronic impairment of short duration is not a disability covered by the ADA.'" Kurylo v. Parkhouse Nursing & Rehab. Ctr., LP, No. CV 17-00004, 2017 WL 1208065, at *4 (E.D. Pa. Apr. 3, 2017) (quoting 42 U.S.C. § 120102(4)(D)). "An injury or illness involving several months of limitation, without long-term or permanent effect, is not a disability under the ADA." Sampson v. Methacton Sch. Dist., 88 F. Supp. 3d 422, 436 (E.D. Pa. 2015) (finding that the plaintiff failed to demonstrate her knee injury was a "disability" where she regained full use of her knee, even though she occasionally used a knee brace and could not stand or walk for long periods of time without discomfort). Temporary restrictions and limitations are "the very definition of such a non-chronic impairment." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274–75 (3d Cir. 2012); see also Bolden v. Magee Women's Hosp. of Univ. of Pittsburgh Med. Ctr., 281 F. App'x 88, 90 (3d Cir. 2008) (holding that the "District Court correctly determined that no reasonable juror could find that Bolden had a 'disability' within the meaning of the ADA" where the plaintiff was able to resume all of her activities within seven months without restriction).

In contrast, courts have denied summary judgment where the plaintiff establishes facts that suggest a "chronic" impairment requiring ongoing treatment. For example, a district court denied summary judgment where the plaintiff testified that he had debilitating back and leg pain four months prior to the termination, and at the time of the termination, the doctor "suggested the possibility of surgery requiring extensive recovery time, with no indication that the plaintiff's condition would be resolved permanently." Cohen v. CHLN, Inc., No. CIV.A. 10-00514, 2011

WL 2713737, at *7–8 (E.D. Pa. July 13, 2011); see also Eastman v. Research Pharm., Inc., No. CIV.A. 12-2170, 2013 WL 3949236, at *9 (E.D. Pa. Aug. 1, 2013) (denying summary judgment where the plaintiff testified that she had suffered back pain flare ups for almost three years that caused her difficulty in bending, walking, and sitting, and the reports by her chiropractor and orthopaedic specialist supported her testimony; Canevari v. Itoh Denki U.S.A., Inc., No. 3:15-CV-1449, 2017 WL 4080548, at *7–8 (M.D. Pa. July 24, 2017) (finding that the plaintiff was "disabled" where the plaintiff testified that "his medical condition and its substantially limiting effects on his activities of daily living" and offered medical record evidence that substantiated his testimony by demonstrating that his back conditions began when he was twelve years old when he was diagnosed with Scheurmann's hypokyphosis).

Given the above precedent, and viewing the undisputed facts in the light most favorable to Plaintiff, I conclude that Plaintiff has not established an "actual disability" as a matter of law. Plaintiff informed Defendant that he had broken his ankle, would not be able to report for work, and would be on crutches for six to eight weeks. (See supra ¶¶ 6–8.) Between October of 2014 and September of 2015, the medical records demonstrate continual improvement and healing of Plaintiff's ankle. (See supra ¶¶ 10–14.) By September 3, 2015, the orthopaedic specialist concluded that Plaintiff had "good range of motion to the ankle," "no instability or deformity," and that Plaintiff was "weightbearing as tolerated without restrictions." Further, the tests indicated "excellent alignment" of his ankle. (See supra ¶ 14.) By June of 2015, the doctor had concluded that the ankle was fully healed. (See supra ¶ 13.)

Because the undisputed evidence establishes that Plaintiff's ankle injury involved "several months of limitation, without long-term or permanent effect" Plaintiff has failed to establish an actual disability under the Rehabilitation Act. Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266,

274–75 (3d Cir. 2012) (finding that temporary restrictions and limitations are "the very definition of such a non-chronic impairment"). Plaintiff's testimony that he has continued pain and cannot run due to his ankle condition is insufficient to establish a disability. See Poper v. SCA Americas, Inc., No. CIV.A. 10-3201, 2012 WL 3288111, at *8–9 (E.D. Pa. Aug. 13, 2012) (granting summary judgment and holding that the plaintiff's testimony was insufficient to establish an actual disability without support from the medical records); Sampson v. Methacton Sch. Dist., 88 F. Supp. 3d 422, 436 (E.D. Pa. 2015) (finding that the plaintiff failed to demonstrate her knee injury was a "disability" where she regained full use of her knee, even though she occasionally used a knee brace and could not stand or walk for long periods of time without discomfort).

Even if Plaintiff could establish that his ankle injury constitutes a disability, Plaintiff has not established the second prong of the prima facie case—that he could otherwise perform the "essential functions of the job with or without reasonable accommodations by the employer." Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (citing 29 U.S.C. § 791). Plaintiff was hired as a temporary postal worker for the holiday season that would last about two months. (See supra ¶¶ 1–2.) This temporary position required the employee to perform numerous jobs on a rotational basis, including, loading mail onto automated equipment and monitoring the flow of mail. (See supra ¶ 3.) Plaintiff signed a waiver acknowledging that he would have to report for duty as scheduled "with no deviations" and that he must be "physically able to perform the duties of the position," which included "prolonged standing up to a minimum of seven (7) hours, walking continuously, pushing containers, pulling, reaching, bending, and lifting heavy sacks/trays of letter mail and magazines (up to seventy (70) pounds)." (See supra ¶¶ 3–4.)

Because Plaintiff has failed to establish a prima facie case of discrimination, I find that Defendant is entitled to summary judgment as to the discrimination claim pursuant to the "actual disability" theory under the Rehabilitation Act.

**B. Plaintiff Has Failed to Establish a Perceived Disability**

Alternatively, Plaintiff alleges that Defendant violated the Rehabilitation Act (Count One) by terminating him on the basis of his "perceived disability," where Defendant regarded Plaintiff as being disabled. Defendant argues that that Plaintiff cannot establish liability under the "perceived disability" theory because Defendant regarded Plaintiff as only temporarily injured. Plaintiff responds that a plaintiff can establish a perceived disability claim even where there is no actual impairment, citing to cases outside of the Third Circuit. For the reasons set forth below, I will grant Defendant's motion for summary judgment as to the discrimination claim pursuant to the "perceived disability" theory under the Rehabilitation Act.

An individual is "regarded as having such an impairment" if the individual is "subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R. § 1630.2(l) "[T]he ADAAA no longer requires a showing that [the plaintiff's] impairment was perceived to substantially limit a life activity." Estate of Murray v. UHS of Fairmount, Inc., No. CIV.A. 10-2561, 2011 WL 5449364, at *9 (E.D. Pa. Nov. 10, 2011) (finding that Defendant knew that the plaintiff suffered from depression and anxiety that was chronic and recurring). "An employer's mere awareness of an impairment, however, is insufficient to establish that it regarded the employee as disabled." Showers v. Endoscopy Ctr. of Cent. Pennsylvania, LLC, 58 F. Supp. 3d 446, 462 (M.D. Pa. 2014).

Defendant may raise an affirmative defense to a "regarded as" claim by demonstrating that the impairment at issue "would be (in the case of a perceived impairment) both transitory and minor." Transitory is defined as "lasting or expected to last six months or less." 29 C.F.R. § 1630.15(f). "Whether an impairment is 'transitory and minor' is to be determined objectively. That is to say, the relevant inquiry is whether the impairment that the employer perceived is an impairment that is objectively transitory and minor." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing 29 C.F.R. § 1630.15(f)) (finding that a broken finger "is objectively transitory and minor"); Michalesko v. Borough, 658 F. App'x 105, 107 (3d Cir. 2016) ("We conclude that any perceived impairment related to [the plaintiff's] single acute stress reaction would have been objectively transitory and minor."). "[I]t is the employer's perception which matters, and not the employee's actual limitations." Vierra v. Wayne Mem'l Hosp., 168 F. App'x 492, 496 (3d Cir. 2006) (finding that the plaintiff did not establish her "regarded as" claim where she informed her employer that she would recover in one month and the plaintiff produced no evidence to suggest that the employer regarded her injury as anything more than temporary); see also Weisel v. Stericycle Commc'ns Sols., No. 3:13-CV-3003, 2015 WL 390954, at *11 (M.D. Pa. Jan. 28, 2015) (finding that the employer did not perceive a disability where the plaintiff informed the employee that he needed surgery but would be able to return to work two weeks later); Kiniropoulos v. Northampton Cty. Child Welfare Serv., 917 F. Supp. 2d 377, 386 (E.D. Pa. 2013) ("[A] plaintiff's potential inability to work for a short period of time while recovering from an injury or surgery does not constitute a 'disability' under the ADA's 'regarded as' analysis.").

Here, Plaintiff has not established a "perceived disability" where he informed Defendant that he had broken his ankle, would not be able to report for duty, and would be on crutches for six to eight weeks. (See supra ¶¶ 6–8.) Plaintiff's broken ankle is objectively transitory and minor.

13

Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing 29 C.F.R. § 1630.15(f)) (finding that a broken finger "is objectively transitory and minor"). The undisputed facts, even when viewed in Plaintiff's favor, cannot refute the evidence that neither Morrow nor Troxell perceived Brearey as disabled. (See supra ¶ 18.)

Accordingly, I find that Defendant is entitled to summary judgment as to the discrimination claim pursuant to the "perceived as" theory under the Rehabilitation Act.

## V. CONCLUSION

For the foregoing reasons, I conclude that Defendant's Motion for Summary Judgment as to the only remaining claim under the Rehabilitation Act (Count One) should be granted.

An appropriate Order follows.